Cox and Spurgin *v.* Hill.

E. S. Cox and John R. Spurgin *v.* Joseph Hill, Chairman of the County Court, *et al.*

1. Revenue Collector. *Sureties.* The sureties of a revenue collector of county taxes for the last two years of the six years during which he continued in office, are entitled to perpetually enjoin suits commenced against them and their principal, by motion, on the official bonds of the principal, upon proof that the taxes for the collection of which they were liable have been paid to the county, although their principal may be largely in default to the county for other years, and they may recover from the county any payments, which have not been reimbursed to them out of the taxes, made by them under a mistaken impression, superinduced by the county, that they were liable to the ·county in a much larger amount.

2. Same. *Same.* Such sureties are not entitled to recover from the county, as overpayments on the taxes of the two years for which they were bound, money paid to the county by their principal either out of the taxes collected by him or out of his own means, on his running account with the county for the entire period of his official service.

3. Same. *Same.* Nor are they entitled to recover from the county, as the sureties of their principal for the collection of State taxes during the same two years, payments alleged to have been made to the county by their principal out of the State taxes collected by him, the county not being shown to have had any knowledge of the source of such payments, and the evidence failing to show any definite sum thus paid.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesboro. H. C. Smith, Ch.

E. N. Griffith and J. E. Reeves for complainants.

H. H. Ingersoll for defendants.

Cooper, J., delivered the opinion of the court.

J. A. Branscom was the revenue collector of the county of Washington from 1868 to 1873 inclusive, and became a defaulter both to the State and county. The complainants, Cox and Spurgin, were his sureties on each set of bonds for the years 1872 and 1873. The original, amended and supplemental bills were filed to enjoin suits at law commenced by motion by the county of Washington against Branscom and his sureties on the bonds for these years, and to recover an alleged overpayment made by their principal to the county, and an alleged payment of State taxes to the county, with a view to have the recovery applied to the exoneration of the complainants as sureties on the bonds made to secure the State revenue. Without any adjudication of the rights of the parties, a reference was made to the master to ascertain and report the amount of county taxes for the years in controversy, and the collections and payments made thereon, and also whether any and what amount of the State taxes for those years was collected and paid to the county. From the report made in compliance with this order, after making some modifications on exceptions filed, the chancellor—and again without any adjudication of rights except by implication—concluded that the county had been overpaid $7,820.49, and gave complainants a decree for this amount, the money, when collected, to be applied to the satisfaction of the taxes due the State.

Branscom, it appears, had a settlement as revenue collector with the chairman of the county court of Washington county at the end of each year during

which he continued in office, except the year 1871. At these settlements, the balances invariably found against him were carried over to his debit at the next settlement. When the settlement was made on the 31st of December, 1872, for that and the preceding year, the balance brought over from the settlement of the 31st of December, 1870, was $15,627.66, and the balance of debit then found was $24,698.82. At the next settlement, on the 31st of December, 1873, when the account was commenced with this large debit, the balance was reduced to $22,833.64. On the 31st of December, 1874, when the last settlement was made, the balance was still further reduced to $11,804.59, to which the chairman of the county court added $1,583.46 (being, he says, ten per cent. on $15,834.62, the amount uncollected May 16, 1874), making the entire indebtedness $13,388.05. It was for this last sum that the motion was proposed to be made at the April term, 1875. At the instance of complainants, the trial of the motion was postponed by the county until the next term, in consideration of $2,786.87 paid by Branscom and complainants, and their promise to apply future collections of taxes as fast as made to the liquidation of the gross indebtedness. Deducting the amount thus paid from the actual sum due as previously found, there will remain, as the entire debt of Branscom, $9,017.72, or, with the ten per cent. penalty added, $10,601.18. And if the payments made are first applied to the taxes of the last three years, there would be no penalty for the period during which the complainants were sureties.

This result is attained by taking the settlements with the chairman of the county court as correct, and they are not sought to be impeached by the county, and deducting the subsequent payments about which there is no contest.

It will thus be seen that at the filing of the original bill in October, 1875, the actual defalcation of Branscom for the six years during which he had been in office had been reduced to $9,017.72. The balance found against him on the 31st of December, 1870, and carried forward into the subsequent settlements, was $15,627.66. His payments and those of complainants had, therefore, been sufficient to pay off the liabilities for the years 1871, 1872 and 1873, and $6,609.94 of his pre-existing debt. *Prima facie*, his defalcations were in the years 1868, 1869 and 1870, and must fall upon the sureties for those years, not on the sureties for 1872 and 1873. No doubt it might have been shown by proof that of the payments made after the 31st of December, 1870, more than the sum of $6,609.74 was paid out of the taxes of the previous years subsequently collected, or out of Branscom's individual means. In the former case, the county might well insist that the taxes thus collected should be applied to the satisfaction of the liabilities of those years. In the latter case, the doctrine of the application of payments to the oldest items of a running account might apply, in the absence of any direction by the debtor. But there is no such proof. On the contrary, the evidence shows that the greater part of the taxes for 1872 and 1873 were collected,

and Branscom testifies that he paid to the county trustee all the taxes collected by him for those years, or paid to him by his deputies. There is not the least warrant in the record for the suggestion, nor has it been so argued, that more than $6,609.75, or even anything like that amount, had been collected from the taxes assessed before 1871, and paid to the county. The complainants, as sureties on the bonds of 1872 and 1873, are clearly entitled to have so much of the taxes of 1872 and 1873 as were actually collected and paid to the county by their principal applied in satisfaction of their liabilities for those years. The direct evidence, as well as the circumstantial evidence touching the pecuniary condition of Branscom and the pressure upon him during the last years of his official tenure, leaves no reasonable doubt that the collections of the taxes for the years 1872 and 1873 were paid to the county. In that view, complainants are entitled to the benefit of such payments, as well as to a credit for any collections of those taxes made under the authority of the county since the removal of Branscom from the office of revenue collector. They are also entitled to a credit for any part of the payment of $2,786.87 in 1875 which was advanced by the complainants, and not reimbursed to them by collection of the taxes for other years than the years 1872 and 1873. Strictly speaking, there should be a decree declaring the rights of the parties, and refering it to the master to take the proper accounts upon the principles settled. If, however, the county of Washington is satisfied that, upon the basis of the

Cox and Spurgin *v.* Hill.

settlements of the chairman of the county court, the report made by the master below, and the proof in the record, the credits to which the complainants would be entitled on the liabilities of 1872 and 1873 would exceed those liabilities, the complainants may take a decree for the perpetual injunction of the suits on the bonds of these years, with the costs of the court below.

The complainants insist, however, that they are further entitled to a recovery from the county of the excess of the payments made by them and their principal over the liabilities on the bonds of 1872 and 1873. The only payments made by the complainants to the county consist of $2,206.37, part of the sum of $2,786.87 paid in consideration of the continuance of the motion made at the April term, 1875. Leaving that sum out of consideration for the moment, all the other payments were made by Branscom. He testifies that he made them out of the collections of taxes received by him or his deputies. In that view, the county was clearly entitled to receive them, and the complainants would have no equity except to have so much of the payments as were derived from the taxes of 1872 and 1873 applied to the satisfaction of their liability for those taxes. Beyond this, they could have no possible claim on money collected for taxes and paid to the county. And if the payments were made by Branscom out of his own means, they were intended to go upon his general indebtedness to the county, and must be so applied. And after all his credits, he still owes the county about $10,000. He

could not, under these circumstances, recover anything from the county, nor, of course, can the complainants for any payments made by him.

Part of the payment of $2,786.87 was made with money collected by complainant Cox from the taxes due the county, either as agent of Branscom or as back-tax collector of the county. A part, also, was reimbursed out of taxes afterwards collected. For the residue, if any, the complainants would be entitled to hold the county responsible, because paid under a mistake of facts. And we do not think that there is enough in this case to take it out of the rule. The payment, it is true, was made in consideration of a continuance, but under a mistaken belief, superinduced by the county, that they were liable for a larger amount, and with the understanding that it should go in satisfaction of that part of the liability of their principal for which they were bound. The complainants, however, admit that they have collected the amount of money borrowed and paid by them, and repaid the loan, and therefore there is nothing due them on this account.

The complainants claim, also, a recovery against the county for the taxes of 1872 and 1873 due the State, which, after being collected by their principal, were paid by him to the county. Their principal does testify that some of the State tax for the years 1872 and 1873 was applied to the payment of the county tax for 1873, but he cannot state the amount. When his language is taken in connection with the facts as shown by the record, he simply means to say

that some of the money collected by him for the taxes due the State were used by him in making payments to the county. But he does not say that the county knew that the payments made to it consisted in part of money which ought to have been paid to the State. Whatever rights the sureties might have to follow money as long as they could ear-mark it, or trace it into the hands of persons taking it with knowledge, it is difficult to see how they can claim it when mingled with other funds of their principal and paid by him to an innocent party. There is, moreover, no sufficient *data* for the demand of any particular sum.

The chancellor's decree will be reversed, and a decree entered in conformity with this opinion. The complainants will pay the costs of this court.